**UNITED STATES, Appellee,**

v.

**William M. HAMILTON, Jr., Master Sergeant, U.S. Air Force, Appellant.**

No. 96–1407.
Crim.App. No. 31768.

U.S. Court of Appeals for the Armed Forces.

Argued June 4, 1997.

Decided Sept. 10, 1997.

Certiorari Denied Jan. 12, 1998.
See 118 S.Ct. 700.

For Appellant: *Captain Tishlyn Taylor* (argued); *Lieutenant Colonel Kim L. Sheffield* and *Captain Harold M. Vaught* (on brief); *Colonel David W. Madsen* and *Lieutenant Colonel Charles L. Carpenter, Jr.* (USAFR).

For Appellee: *Lieutenant Colonel Michael J. Breslin* (argued); *Captain Libby A. Brown* (on brief).

*Opinion of the Court*

EFFRON, Judge:

Following a trial by officer and enlisted members sitting as a general court-martial on a specification alleging premeditated murder of his estranged wife, appellant was convicted of voluntary manslaughter. *See* Arts. 118 and 119, Uniform Code of Military Justice, 10 USC §§ 918 and 919, respectively. He was sentenced to a dishonorable discharge, confinement for 10 years, and reduction to the lowest enlisted grade. The convening authority approved these results, and the Court of Criminal Appeals affirmed in an unpublished opinion. On appellant's petition, we granted review of the following issue:

WHETHER ERRORS IN THE SJA [STAFF JUDGE ADVOCATE]'S RECOMMENDATION AND ADDENDUM THERETO (INCLUDING PREPARATION OF THE RECOMMENDATION BY TRIAL COUNSEL'S SPOUSE AND ERRONEOUS ADVICE IN THE ADDENDUM TO THE EFFECT THAT LEGAL ERROR IS NOT AN APPROPRIATE BASIS FOR CORRECTIVE ACTION BY THE CONVENING AUTHORITY) NECESSITATE A NEW CONVENING AUTHORITY ACTION OR OTHER APPROPRIATE RELIEF.

For the reasons discussed below, we hold that a new recommendation and action are not required.

## I. Background

Prior to trial, Major (Maj) C represented the SJA's office in the negotiations with local civilian officials that resulted in military jurisdiction over the prosecution of this case. She also represented the Government at a hearing concerning pretrial confinement of appellant. Subsequently, she was designated as the Acting SJA for the command.

Following appellant's trial, Maj C prepared a draft post-trial recommendation to the convening authority. *See* Art. 60(d), UCMJ, 10 USC § 860(d) (1983); RCM 1106, Manual for Courts–Martial, United States (1995 ed.). Prior to transmitting the recommendation, however, she decided to undertake research and consultation on the question whether she should transfer responsibility for preparing the recommendation to another attorney. She primarily was concerned about the fact that her husband had been trial counsel at appellant's court-martial.

Subsequently, she decided to transfer responsibility for the post-trial recommendation to another attorney in order to avoid any appearance of bias. Because she was scheduled to be away from her office during the following week for temporary duty, she asked Maj K—who would be Acting SJA in her stead—to take responsibility in her absence.

Maj K prepared a recommendation and served it on appellant. *See* Art. 60(d); RCM 1106(f)(1). Apparently as a result of administrative inadvertence, Maj C's draft recommendation also was served on appellant. After examining the two versions, appellant's defense counsel observed that they nearly were identical.

Subsequently, a new SJA, Lieutenant Colonel (LtCol) W, was assigned to the command, and defense counsel submitted a document to him that responded to the recommendation that had been prepared by Maj K. *See* RCM 1106(f)(4). Defense counsel challenged Maj C's role in writing the recommendation, arguing, "There is a definite appearance of impropriety and probable bias in having the wife of the Chief Prosecutor of MSgt Hamilton write the advice and recommendation to the convening authority." Furthermore, defense counsel pointed out that Maj C had been "intricately involved with the government witnesses and trial preparation" as the "Chief of Military Justice" prior to the trial. Defense counsel acknowledged that Maj K also had written a recommendation, but he noted that it was the *"very same recommendation"* that had been written by Maj C, simply with someone else's signature. In addition to this issue, defense counsel alleged that five separate legal errors had occurred at trial.

LtCol W prepared an addendum to the recommendation, *see* RCM 1106(f)(7), in which he addressed the six legal issues that had been raised in defense counsel's response. He "remind[ed]" the convening au-

thority that he was "not required to review the case for legal errors or factual sufficiency, but ... [could] take corrective action." With respect to three of the issues, which concerned admissibility of evidence, he advised the convening authority in each instance as follows:

> Evidentiary rulings do not fall under the province of the convening authority, but are matters properly brought before the [military judge], as was done in this case on this issue. Unfavorable rulings are issues for appeal rather than reasons for granting of clemency.

As to the issue of Maj C's role in preparing the recommendation, LtCol W provided the following advice to the convening authority:

> Another SJA's Recommendation was prepared and signed by Maj [K], Acting Staff Judge Advocate. Before signing the Recommendation, Maj [K] reviewed the recommendation and the ROT [record of trial] and concluded that the sentence should be imposed as adjudged. He was in no way obligated to reach the same conclusion that Maj [C] did, but could have changed the recommendation had he seen fit to do so. His independent review of the ROT and the SJA's Recommendation prior to signing it cleanses any possible taint and renders the SJA's Recommendation proper for your consideration.

## II. Discussion

Appellant contends that the

> "SJA recommendation and addendum ... were defective in two ways: (1) the SJA recommendation was prepared by Maj [C], who was a disqualified person under Article 6(c), UCMJ, and RCM 1106(b); and (2) the convening authority was given erroneous and misleading advice in the addendum which clearly suggested that legal errors are not an appropriate basis for corrective action by the convening authority."

Final Brief at 2.

### A. Disqualification of Maj C

■ Appellant contends that, because the recommendation submitted by Maj K to the convening authority was the draft written by Maj C, any disqualification of Maj C extends to use of her work-product by another attorney in the same office. *See United States v. Hightower*, 5 USCMA 385, 389, 18 CMR 9, 13 (1955).

Appellant makes two distinct arguments in support of his predicate claim that Maj C was disqualified from writing the post-trial recommendation. First, he points to the language in Article 6(c), UCMJ, 10 USC § 806(c), and in RCM 1106(b) that disqualifies the "trial counsel" in a case from acting later as the staff judge advocate to the convening authority in the same case. He urges that "trial counsel" extends beyond the person who prosecutes in the name of the United States in the courtroom and includes all persons who act on behalf of the United States prior to trial. Final Brief at 3.

Second, appellant argues that Maj C "was placed in the position of reviewing the actions of her own spouse in a contested case where there were numerous contested evidentiary issues." *Id.* at 4. While Article 6(c) and RCM 1106(b) do not disqualify a trial counsel's spouse expressly, appellant contends that the reviewing spouse is someone who has "other than an official interest" in the case when she must review the prosecution's trial performance. *Id.*; *see* RCM 1106(b), Discussion; *see generally United States v. Rice*, 33 MJ 451, 452-53 (CMA 1991) (Government sentencing witness disqualified from writing post-trial recommendation).

Under the circumstances of this case, we need not decide whether Maj C was disqualified, because Maj C's actions relating to the SJA's recommendation to the convening authority did not materially prejudice the substantial rights of appellant. *See* Art. 59(a), UCMJ, 10 USC § 859(a). After Maj C had drafted her recommendation, she realized that she might have a conflict or an appearance of one in fulfilling that responsibility. Consequently, she delegated that duty to the next most senior officer, to be performed while she was absent from the installation.

Although Maj C's draft and Maj K's recommendation to the convening authority virtually are identical, appellant has failed to

demonstrate that the text of the recommendation prejudiced his opportunity to receive relief from the convening authority. The entries on the first page of the recommendation repeat routine administrative information. The content of the following one and one half pages of text—which includes matters such as a list of appellant's awards and decorations, a short discussion of the purpose of the SJA's recommendation, a statement that the evidence was legally sufficient, a statement that there were no legal errors, and a brief recital of additional background information on appellant—is bland and unremarkable.

We note that the only discussion of any substantive issue in controversy did not occur in the initial recommendation submitted by Maj K but in the subsequent addendum written by LtCol W, the new SJA. Appellant does not claim that Maj C played any role in the preparation of LtCol W's addendum. In this unusual context, Maj K's borrowing of Maj C's recommendation, which was plain-vanilla in substance, did not prejudice appellant, and appellant has not made any specific representation in this Court to the contrary. *Cf. United States v. Craig,* 28 MJ 321, 324–25 (CMA 1989)(remand usually in order when SJA does not comply with RCM 1106 or when record is unclear whether convening authority considered clemency materials).

### B. Advice on Convening Authority's Review of Legal Issues

■ Appellant contends that the addendum to the recommendation, written by LtCol W, "clearly suggested [incorrectly] that legal errors are not an appropriate basis for corrective action by the convening authority." Final Brief at 2. Although we do not agree that such a suggestion "clearly" was made, we recognize that the SJA's advice, as a whole, is ambiguous in this regard.

The SJA began his discussion of appellant's contention of legal error by informing the convening authority that he was "not required to review the case for legal errors" but that he could "take corrective action." In his ensuing discussion of the legal issues raised by appellant, however, the SJA seemed to muddy the water. His advice as to three of those issues—that "[e]videntiary

rulings do not fall under the province of the convening authority" and that "[u]nfavorable rulings are issues for appeal rather than reasons for granting clemency"—arguably is incomplete to the extent that it implies that such matters are of no proper concern to the convening authority. That implication, if made, would be incorrect because a convening authority statutorily may take action in a case "only after consideration of any matters submitted by the accused. . . ." Art. 60(c)(2).

Notwithstanding the mandate to consider defense submissions, it is clear that the convening authority's power "to modify the findings and sentence of a court-martial is a matter of command prerogative involving the sole discretion of the convening authority." Art. 60(c)(1). As a matter of command prerogative, "[t]he convening authority is not required to review the case for legal errors or factual sufficiency." RCM 1107(b)(1).

■ In matters of clemency, the convening authority's obligation to consider defense submissions is uniquely critical to an accused. This Court often has observed that the convening authority is an accused's last best hope for clemency. *See United States v. Cook,* 46 MJ 37, 39 (1997). Clemency is the heart of the convening authority's responsibility at that stage of a case. If an SJA gives faulty advice in this regard, the impact is particularly serious because no subsequent authority adequately can fix that mistake.

■ In contrast, the convening authority's statutory role vis-a-vis defense claims of legal error is less pivotal to an accused's ultimate interests. Although an SJA must respond to a defense claim of legal error, *see Craig,* 28 MJ at 324, "[t]he response may consist of a statement of agreement or disagreement with the matter raised by the accused. An analysis or rationale for the staff judge advocate's statement, if any, concerning legal errors is not required." RCM 1106(d)(4).

■ Thus, while a convening authority has the power to respond remedially to an accused's claim of legal error and while he is encouraged to act in the interest of fairness to the accused and efficiency of the system, he is not required to do so. Unlike the lost

opportunity occasioned by defective SJA advice on matters of clemency, erroneous advice by an SJA as to a claim of legal error that leads a convening authority not to afford relief to an accused can be corrected by appellate litigation of the claimed error.

It is appropriate in this context for an appellate court to look for prejudice that might have flowed from misadvice as to a defense claim of legal error. *See United States v. Welker*, 44 MJ 85 (1996). We find none. While appellant has pursued on appeal some of the claims of legal error that he raised in his response to the SJA recommendation, neither the Court of Criminal Appeals nor this Court has considered any of these issues to be meritorious. Even if the originally ambiguous advice from the SJA might have misled the convening authority with respect to his power to correct legal errors, the absence of any such errors precludes a finding that the SJA's advice prejudiced appellant.

### III

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges SULLIVAN, CRAWFORD, and GIERKE concur.