# UNITED STATES NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS WASHINGTON, D.C.

**Before**
**J.A. FISCHER, D.C. KING, T.H. CAMPBELL**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

v.

**JOHN A. KING**
**PRIVATE (E-1), U.S. MARINE CORPS**

**NMCCA 201500106**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged**: 10 December 2014.
**Military Judge**: LtCol C.M. Greer, USMC.
**Convening Authority**: Commanding Officer, 2d Maintenance Battalion, Combat Logistics Regiment 25, Camp Lejeune, NC.
**Staff Judge Advocate's Recommendation**: Maj M.T. Schnakenberg, USMC.
**For Appellant**: Maj Emmett Collazo, USMCR.
**For Appellee**: CAPT Diane L. Karr, JAGC, USN; LT James Belforti, JAGC, USN.

**12 January 2016**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

Pursuant to his pleas, a military judge sitting as a special court-martial convicted the appellant of two specifications of wrongful use of a controlled substance and one specification of larceny, in violation of Articles 112a and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 912a and 921. The military judge sentenced the appellant to ten months of

confinement and a bad-conduct discharge.  The convening
authority dismissed the Article 121 conviction with prejudice
due to legal error and approved four months confinement and the
bad-conduct discharge.[1]

On appeal, the appellant claims that a sentence rehearing
is required.  After careful consideration of the record of trial
and the parties' submissions, we set aside the convening
authority's action and remand the case for new post-trial
processing.  Arts. 59(a) and 66(c), UCMJ.

## Background

Lance Corporal (LCpl) King became addicted to the
painkiller Oxycodone after being prescribed the drug several
times in his short military career.  To fuel his addiction, the
appellant rifled through the wallet of his friend and fellow
Marine, LCpl G, to obtain LCpl G's social security number and
birthdate.  Armed with that information, the appellant called
LCpl G's bank and transferred approximately $11,000.00, in
increments of $200-$600, into his own bank account.  For this
conduct, the appellant pled guilty to stealing from LCpl G, on
divers occasions, money in an amount greater than $500.00.  The
appellant also pled guilty to one specification of wrongful use
of marijuana and one specification of wrongful use of
amphetamine.

The Government's sentencing evidence included:
1) Prosecution Exhibit 1, a record book entry for a nonjudicial
punishment (NJP) the appellant received for a violation of
Article 112a by wrongful use of what appears to be a derivative
of Oxycodone; 2) PE 2, the urinalysis result for this NJP
offense; 3) PE 3, urinalysis result indicating the appellant
used morphine on or about 06 May14;[2] and 4) PE 8, the appellant's
statement to law enforcement discussing the larceny.  The
military judge sentenced the appellant to ten months'
confinement and a bad-conduct discharge.  The pretrial agreement
limited the appellant's confinement to eight months.

On 17 February 2015, trial defense counsel submitted a
clemency request in which she argued the Article 121 charge was

---

[1] *See* Convening Authority's Action of 17 Mar 2015 at 2.

[2] PEs 2 and 3 were admitted over defense objection as relevant to the larceny
charge since the appellant admitted he used the stolen money to purchase
"painkillers."

2

defective because it improperly identified the victim as LCpl G instead of the financial institution. The staff judge advocate agreed with the allegation of legal error and recommended that the convening authority dismiss the larceny charge and approve only four months' confinement and a bad-conduct discharge. While advising the convening authority that "a Bad-Conduct Discharge and four months confinement is an appropriate sentence for conviction of two specifications of Article 112a[,]" the staff judge advocate provided no other analysis for his recommendation nor guidance as to what factors the convening authority should consider to cure the error.[3] The convening authority then dismissed the larceny charge with prejudice and approved only four months' confinement and the bad-conduct discharge.

## Discussion

While acknowledging that the convening authority was correct to dismiss the larceny charge, the appellant nonetheless argues that an "error [in] the sentencing phase persists" which requires a new sentencing hearing.[4] We disagree but determine that new post-trial processing is required.

"Because of the highly discretionary nature of the convening authority's action on the sentence, we will grant relief if an appellant presents "some colorable showing of possible prejudice." *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000) (citation and internal quotation marks omitted). At the time he took action on the appellant's court martial, the convening authority had wide discretion under Article 60(c), UCMJ to correct legal errors.[5] *See United States v. Perez*, 66 M.J. 164, 165 (C.A.A.F. 2008) ("The broad authority under Article 60(c), UCMJ, includes the power to dismiss charges and reassess a sentence to cure a legal error or moot allegations of such."); *United States v. Hamilton*, 47 M.J. 32, 35 (C.A.A.F. 1997) (stating that a convening authority "has the power to respond remedially" to a claim of legal error); *United States v. Reed*, 33 M.J. 98, 99 (C.M.A. 1991)("Of course, it is entirely appropriate and certainly commendable for a convening authority

---

[3] Staff Judge Advocate ltr of 3 Mar 2015 at 2. *See also* Staff Judge Advocate's Addendum to the Recommendation of 18 Feb 2015 at 2.

[4] Appellant's Brief of 26 Jun 2015 at 13.

[5] We note that the Fiscal Year 2014 National Defense Authorization Act has since significantly restricted this authority.

in his discretion to undertake curing such an error before the case reaches appellate levels.").

However, when acting to cure legal error, the convening authority must be guided by the same rules applicable to appellate authorities. *See United States v. Josey*, 58 M.J. 105, 109 (C.A.A.F. 2003) (sentence reassessment factors set forth in *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986) apply to convening authority); *Reed*, 33 M.J. at 99-100 (convening authority's action "must be guided by the same rules applicable to appellate authorities. The assurance must be that an accused is . . . placed in the position he would have occupied if an error had not occurred." (citations and internal quotation marks omitted.); *see e.g.,* RULE FOR COURTS-MARTIAL 1107(e)(1)(B)(iv), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).

Therefore, when curing error, it is "imperative" that the staff judge advocate "make clear to the convening authority the distinction between, on the one hand, curing any effect that the error may have had on the sentencing authority and, on the other, determining anew the appropriateness of the adjudged sentence." *Reed*, 33 M.J. at 100 (citation omitted). In other words, the convening authority must be advised that he must either approve a sentence no greater than the sentencing authority would have adjudged absent the error or order a sentence rehearing. *See Sales*, 22 M.J. at 308; *see also*, *United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013); *United States v. Moffeit*, 63 M.J. 40, 41 (C.A.A.F. 2006). Here, the staff judge advocate failed to make clear this distinction or to furnish any guidance at all as to how the convening authority rationally should cure any prejudice in the sentence. "Without guidance from his legal advisor [on this issue], the convening authority is acting in the dark." *Reed*, 33 M.J. at 100 (citation omitted).

While R.C.M. 1106(d)(6) provides that "[i]n case of error in the recommendation not otherwise waived under subsection (f)(6) of this rule, appropriate corrective action shall be taken by appellate authorities without returning the case for further action by a convening authority," our superior court has held that "failure to return the case to the convening authority for action on the basis of a properly prepared recommendation deprives both '[t]he accused and the convening authority' of the 'well-written and carefully considered post-trial recommendation' to which they are entitled." *United States v. Hill*, 27 M.J. 293, 296 (C.M.A. 1988) (citations omitted). This is so unless this court is "convinced that, under the particular

4

circumstances, a properly prepared recommendation would have [had] no effect on the convening authority's discretion." *Id.* Here, we are not so convinced.

At sentencing, the trial counsel argued for the jurisdictional maximum punishment based primarily upon the circumstances and ramifications of that now-dismissed larceny charge -- the gravamen of the appellant's criminal misconduct.[6] Further, while the penalty landscape did not change, we are not convinced that evidence of the appellant's larceny, or PEs 2 and 3 which the military judge found to be relevant based upon that larceny, would be admissible in determining an appropriate sentence for two specifications of unlawful drug use. Considering the totality of the circumstances, the Government has not carried its burden of convincing us that "a properly prepared recommendation would have [had] no effect on the convening authority's" action to rectify the impact on the sentence from the error on the finding. *Id.* Accordingly, the appellant is entitled to a new action by a convening authority advised by his staff judge advocate consistent with this opinion.

## Conclusion

The convening authority's action dated 17 March 2015 is set aside and the record of trial is returned to the Judge Advocate General for remand to an appropriate convening authority for new post-trial processing, and then return to this court for completion of appellate review.

For the Court

R.H. TROIDL
Clerk of Court

---

[6] In an effort to convince this court that the appellant was not prejudiced, the Government argues that evidence related to the appellant's theft was nonetheless admissible under R.C.M. 1001(b)(4) since the appellant admitted to using the stolen funds to obtain the drugs he pleaded guilty to using. We disagree. The appellant admits to using the stolen funds to purchase "[d]rugs from Steve mostly. The rest was spent on gas and cigarettes." PE 8 at 2. "Steve" was a civilian from whom the appellant purchased "painkillers." PE 8 at 3. The record indicates that the marijuana and amphetamine were provided -- months after the larceny ceased -- by other Marines. ROT at 21, 24.

5