*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HITESMAN, GASTON, and GERRITY
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Anthony T. STROMER, Jr.**
Corporal (E-4), U.S. Marine Corps
Appellant

**No. 201800320**

Appeal from the United States Navy-Marine Corps Trial Judiciary

Decided: 29 May 2020

Military Judge:
John P. Norman

Sentence adjudged 27 August 2018 by a special court-martial convened at Marine Corps Base Camp Pendleton, California, consisting of a military judge sitting alone. Sentence approved by convening authority: reduction to E-1, confinement for eight months, and a bad-conduct discharge.[1]

---

[1] In accordance with a pretrial agreement, the convening authority suspended confinement in excess of 60 days and the bad-conduct discharge. Both the suspended confinement period and the punitive discharge have since been remitted for Appellant, who was administratively discharged on 31 October 2018.

For Appellant:
*Captain Scott F. Hallauer, JAGC, USN*
*Lieutenant R. Andrew Austria, JAGC, USN*[2]

For Appellee:
*Major Clayton L. Wiggins, USMC*
*Lieutenant Joshua C. Fiveson, JAGC, USN*

Judge GERRITY delivered the opinion of the Court, in which Senior Judges HITESMAN and GASTON joined.

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————————

GERRITY, Judge:

This case is before us a second time, having already been remanded once for post-trial processing errors. As we previously expressed regarding this single-specification guilty plea, consisting of a mere 47-page record of trial, "[t]his case is yet another striking example of excessive reliance on templates, a lack of appreciation of the importance of post-trial process in the military justice system, and a failure to pay attention to detail." *United States v. Stromer*, No. 201800320, 2019 CCA LEXIS 134, at *5-6 (N-M. Ct. Crim. App. March 26, 2019) (unpub. op.).

Once again this Court is forced to address repeated errors in post-trial processing, due to a lack of attention, care, and accountability, and a failure to read and follow post-trial processing rules and court orders.

## I. BACKGROUND

In September 2017, Appellant roomed for approximately one month with a more junior Marine in the inbound barracks aboard Camp Pendleton, California. During that time, Appellant obtained his roommate's debit card

---

[2] Captain Hallauer and Lieutenant Austria have both appeared before the Court on behalf of Appellant. Captain Hallauer, detailed pursuant to the Appellant's request, filed the original Defense brief in this case without assignment of error.

information and used it more than 130 times over the next several months to purchase various goods and services, including food delivery, airline tickets, Internet pornography, and online gaming subscriptions, none of which was individually for over $500. Eventually the card was shut off, and Appellant was confronted by law enforcement, confessed, and admitted in court to making purchases with the card totaling more than $4,000.

Pursuant to a pretrial agreement with the convening authority, Appellant pleaded guilty to one specification of larceny of property of a value of more than $500, in violation of Article 121, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 921 (2012). In sentencing, other than a brief oral unsworn statement, Appellant offered no matters to be considered in extenuation or mitigation.

In the Post-Trial and Appellate Rights Advisement, Appellant asked to be personally served with the Staff Judge Advocate's Recommendation [SJAR] and record of trial. The military judge confirmed that Appellant had reviewed the Post-Trial and Appellate Rights Statement with his counsel and had no questions about it. He was advised that if the convening authority approved a bad-conduct discharge, this Court would review the case and he would be entitled to representation by military appellate counsel before this Court at no cost to him.[3] He signed this rights advisement, which among other things stated, "I specifically *authorize* my appellate defense attorney to petition the CAAF [Court of Appeals for the Armed Forces] with any claim on my behalf."[4]

After being served with the record of trial and the SJAR, Appellant waived his right to respond to the SJAR or to submit any matters in clemency.

On appeal, Appellant's original detailed Appellate Defense Counsel submitted his case without assignment of error. However, after careful consideration of the record, and based upon inaccuracies in the SJAR and the Court-Martial Order [CMO], we were unable to determine whether the convening authority fully complied with the terms of the pretrial agreement. In fact, the SJAR and CMO contained so many errors that we "were unable to decipher the SJAR and CMO passages at issue," which we found to be "nonsensical." *Stromer*, 2019 CCA LEXIS 134, at *6. Accordingly, we set aside the CMO and remanded the case for new post-trial processing.

---

[3] Appellate Ex. III; Record at 43.

[4] Appellate Ex. III (emphasis in original).

A new CMO was completed on 24 June 2019, again approving the adjudged sentence. The new CMO, repeated the language in the previous CMO that the recommendations of the staff judge advocate and any addenda thereto were considered and there were no matters submitted by the victim or Appellant. However, a new SJAR was not completed as required by Rules for Courts-Martial [R.C.M.] 1106 and 1107. Nor was the victim provided an opportunity to comment in accordance with R.C.M. 1105A, nor was Appellant provided the opportunity to submit matters for clemency or legal errors in accordance with R.C.M 1005.

Hence, the case must again be remanded for correct post-trial processing in accordance with the Rules for Courts-Martial.

## II. DISCUSSION

Before a convening authority acts on the results of trial, an accused has the opportunity to "submit to the convening authority any matters that may reasonably tend to affect the convening authority's decision whether to disapprove any findings of guilty or to approve the sentence." R.C.M. 1105(b)(1); *see also* Article 60(b)(1), UCMJ. An accused has 10 days from the date of the SJAR to file any submission under R.C.M. 1105 for consideration by the convening authority, and the convening authority can only take action after the applicable R.C.M. 1105 time periods have expired or if the accused waives such right. R.C.M. 1105, 1107. It has long been known to military justice practitioners that the convening authority's action provides an accused's "best hope" for clemency in qualifying cases. *United States v. Stephenson*, 33 M.J. 79, 83 (C.M.A. 1991) (citation and internal quotation marks omitted); *see also, United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001); *United States v. Wheelus*, 49 M.J. 283, 287 (C.A.A.F. 1998).

Here, Appellant was not afforded this right during the second round of post-trial processing following our first remand, in violation of our superior court's holding in the almost identical case of *United States v. Rosenthal*. 62 M.J. 261 (C.A.A.F. 2005). In *Rosenthal*, on the first appeal to our Court, the case was sent back to the convening authority for a new convening authority's action after post-trial errors. A new SJAR was properly prepared and served on counsel, but the trial defense counsel did not submit or consult with the client about submitting R.C.M. 1105 matters because the client had previously waived such submissions when the original action was taken. The convening authority then acted without providing the required opportunity to submit R.C.M. 1105 matters. On the second appeal, our superior court found error in that regard and remanded the case back to the convening authority

for another post-trial review and action in order to afford Rosenthal an opportunity to submit R.C.M. 1105 matters. In so holding, the CAAF stated:

> When a case is remanded for a new convening authority's action, the convening authority is not limited to considering the circumstances as they existed at the time of the initial review. The convening authority may consider other appropriate matters—including changes in circumstances following the initial action on the case—for purposes of determining whether clemency or other post-trial action is warranted. A servicemember has the corresponding right to bring "matters in mitigation which were not available for consideration at the court-martial" to the attention of the convening authority.

> A decision by an appellate court to set aside the convening authority's action on the results of trial is a significant development because it entitles an appellant to a new post-trial proceeding.

*Id.* at 262-63 (citations omitted).

## A. No Subsequent SJAR Completed

In our previous opinion we highlighted for the Government that the "failure to return the case to the convening authority for action on the basis of a properly prepared recommendation deprives both '[t]he accused and the convening authority' of the 'well-written and carefully considered post-trial recommendation' to which they are entitled." *United States v. Hill*, 27 M.J. 293, 296 (C.M.A. 1988) (citations omitted). We detailed the errors in the SJAR and CMO, so that the Government had a roadmap to expeditiously and accurately perform its duties for post-trial action. Apparently, that was not enough. The convening authority took three months to take new action on the case and promulgate a new CMO, but skipped the mandatory, critical piece of doing so on the basis of a new SJAR and ensuring Appellant was again afforded the right to submit R.C.M. 1105 matters.

Since R.C.M. 1107 was not followed; the new SJAR was not prepared at all, let alone in accordance with R.C.M. 1106; and Appellant was not provided the opportunity to submit matters in accordance with R.C.M 1105 (when the SJAR is correctly done, personal service of the SJAR, in accordance with

R.C.M. 1105, must be made to Appellant per his post-trial rights advisement election); we are left with no option but to again set aside the CMO.[5]

## B. Subsequent Review

This Court is mindful that remanding the case does not necessarily provide Appellant full relief at this stage of the proceeding, and we will again assess for post-trial processing or other errors when the case is returned for our Article 66 review.

## III. CONCLUSION

The CMO dated 24 June 2019 is **SET ASIDE** and the record of trial is returned to the Judge Advocate General for remand to an appropriate convening authority for new, correct post-trial processing in accordance with R.C.M. 1105, 1105A, 1106 and 1107, and then return to this Court for completion of appellate review.

Senior Judges HITESMAN and GASTON concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[5] *United States v. Hill*, 27 M.J. 293, 296 (C.M.A. 1988). *See also United States v. Craig*, 28 M.J. 321 (C.M.A. 1989). "Since it is very difficult to determine how a convening authority would have exercised his broad discretion if the staff judge advocate had complied with R.C.M. 1106, a remand will usually be in order." *Id.* at 325 (quoting *United States v. Hill*, 27 M.J. 293, 296 (C.M.A. 1988)); *United States v. Reed*, 33 M.J. 98 (C.M.A. 1991); *United States v. Hamilton*, 47 M.J. 32 (C.A.A.F. 1997). "This court has often observed that the convening authority is an accused's last best hope for clemency. Clemency is the heart of the convening authority's responsibility at that stage of a case. If an SJA gives faulty advice in this regard, the impact is particularly serious because no subsequent authority can adequately fix that mistake." *Id.* at 35 (citation omitted); *United States v. Ord*, 63 M.J. 279 (C.A.A.F. 2006).