*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
FULTON, CRISFIELD, and HITESMAN,
Appellate Military Judges

———————————————

**UNITED STATES**
Appellee

**v.**

**Joshua S. KING, Jr.**
Master-at-Arms Seaman (E-3), U.S. Navy
Appellant

**No. 201800016**

Argued: 14 February 2019; Decided: 23 July 2019

Appeal from the United States Navy-Marine Corps Trial Judiciary. Military Judge: Captain Robert P. Monahan, JAGC, USN. Sentence adjudged 16 January 2018 by a general court-martial convened at Naval Station Norfolk, Virginia, consisting of officer and enlisted members. Sentence approved by the convening authority: reduction to E-1, forfeiture of all pay and allowances, confinement for eight years, and a dishonorable discharge.

For Appellant: Matthew Flynn, Esq. (argued); Brian A. Pristera, Esq. (on brief); Major Maryann N. McGuire, USMC (on brief).

For Appellee: Captain Luke Huisenga, USMC (argued); Captain Brian L. Farrell, USMC (on brief).

Senior Judge HITESMAN delivered the opinion of the Court, in which Chief Judge CRISFIELD and Senior Judge FULTON joined.

———————————

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 30.2.**

———————————

HITESMAN, Senior Judge:

Appellant was convicted, contrary to his pleas, of sexual assault in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2012).

The appellant raises five assignments of error (AOE): (1) that Article 120(b)(1)(B), UCMJ, is void for vagueness, (2) that the military judge failed to instruct the members that lack of consent is an element of sexual assault by bodily harm, (3) that trial counsel's inflammatory remarks prejudiced the panel, (4) that the evidence was legally and factually insufficient to convict the appellant, and (5) that the military judge erred by not admitting evidence of the victim's sexual behavior or predisposition.

The appellant raised an additional AOE regarding appellate defense counsel's access to sealed mental health records viewed in camera by the military judge and not disclosed to counsel at trial. We viewed the records in camera and determined that the mental health records contained "no evidence required by the Constitution to breach the victim's psychotherapist-patient privilege."[1] Accordingly, we find this AOE is without merit.

Having examined the record of trial and the pleadings of the parties and considered oral argument, we find no merit in any of the AOEs and affirm the findings and sentence.

## I. BACKGROUND

The appellant was convicted of sexually assaulting KM by entering her room, grabbing and pulling her legs to the side of the bed and penetrating her vulva with his penis. It was dark, and as KM realized what was happening, she asked who was doing this to her. The appellant responded that it was K.M.'s best friend, Gunner's Mate First Class HG. Appellant then flipped KM over onto her stomach and penetrated her vulva with his fingers and then

———————————

[1] N-M. CT. CRIM. APP. Order dtd 3 April 2019.

again with his penis while he held her arm behind her back and pushed her shoulder into the bed.

Earlier in the evening, the appellant, KM, and two friends of KM, JB and SB, attended an informal dinner party at HG's house. All were drinking alcohol to various levels of intoxication. At about 2300, KM went to her room to go to sleep. Shortly thereafter, HG went to his room for the night. Sometime later that evening, the appellant and JB engaged in consensual sex outside the house, in the garage, in JB's car, and on the back porch. JB abruptly ended their sexual encounter when the appellant called her a whore. JB decided to sleep in her car and the appellant moved to the living room where SB was sleeping on the couch. The appellant attempted to arouse SB who, in an effort to thwart his advances, eventually kissed him, stood up with him, and then pushed him down onto a nearby loveseat. SB then went to bring JB inside from her car. When SB and JB returned to the living room, they did not see the appellant as they made their way upstairs to find a place to sleep.

The house was warm and KM decided to sleep nude on top of the covers of her bed. SB entered KM's room looking for a place to sleep but decided to look elsewhere when she saw KM nude and asleep. SB closed the door but left the light on as she left KM's room. A short time later, the appellant entered KM's room and assaulted her.

Additional facts necessary to the resolution of particular assignments of error are included in the discussion.

## II. DISCUSSION

### A. Void for Vagueness

The appellant argues that Art. 120(b)(1)(B), UCMJ, is unconstitutionally vague because it fails to provide adequate standards by which an ordinary person can intelligently choose, in advance, whether a sexual encounter is permitted under the law. We disagree.

A statute is unconstitutionally vague if it does not provide a Service Member of ordinary intelligence fair notice of what is prohibited, or if it is so standardless that it authorizes or encourages discriminatory enforcement. *See United States v. Williams*, 553 U.S. 285, 304 (2008). We review vagueness determinations de novo. *United States v. Disney*, 62 M.J. 46, 48 (C.A.A.F. 2005).

A Service Member must have standing in order to challenge a statute as vague. Even where one could imagine a hypothetical fact pattern presenting vagueness concerns for a given statute, if the appellant's alleged conduct is

3

clearly proscribed, he has no standing to challenge the law. *United States v. McGuinness*, 35 M.J. 149, 152 (C.M.A. 1992). Here, the appellant allegedly entered KM's room, grabbed her legs and pulled them to the side of the bed, penetrated her vulva with his penis, told her that he was her friend HG, flipped her over onto her stomach while twisting her arm and pressing her shoulder into the bed, and penetrated her with his fingers and again with his penis until he ejaculated. The appellant has been given fair notice that to the extent this conduct amounted to sexual assault by bodily harm, such conduct was proscribed by the statute. The record is devoid of any facts that would place the appellant in a position where the sex act was consensual but committed concurrently with an otherwise unrelated offensive touching as he hypothesizes.

We leave to the trier of fact, subject to our legal and factual sufficiency review, the question of whether the appellant committed the acts alleged, and whether they constitute sexual assault under Art. 120(b)(1)(B), UCMJ. These questions go to whether the appellant did in fact commit a sexual assault in violation of the statute, and do not cast doubt on whether the statute prohibits sexual assault by bodily harm with sufficient clarity that the appellant could have understood that his alleged conduct was proscribed. *See Williams*, 553 U.S. at 306 ("Close cases can be imagined under virtually any statute. The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt."). We find that the appellant does not have standing to complain that Art. 120(b)(1)(B), UCMJ, is unconstitutionally vague.

**B. Lack of Consent**

The appellant complains that the military judge erred when he instructed the members on the elements of the offense of sexual assault by bodily harm. Specifically, the appellant now urges us to find that lack of consent is an element that the government must prove beyond a reasonable doubt. We disagree.

*1. Waiver*

RULE FOR COURTS-MARTIAL (R.C.M.) 920(e), MANUAL FOR COURTS-MARTIAL (MCM), UNITED STATES (2016 ed.) requires the military judge to instruct on the elements of each offense. R.C.M. 920(f) provides that failure to object to an instruction, or to the omission of an instruction, before the members close to deliberate constitutes waiver of the objection in the absence of plain error. "[W]aiver must be established by *affirmative* action of the accused's counsel, and not by a mere failure to object to erroneous instructions or to request proper instructions." *United States v. Smith*, 50 M.J. 451, 455-56 (C.A.A.F. 1999) (internal quotations omitted). In general, a statement of

"'no objection' constitutes an affirmative waiver of the right or admission at issue." *United States v. Swift*, 76 M.J. 210, 217 (C.A.A.F. 2017).

The appellant's civilian defense counsel participated in a discussion with the military judge and trial counsel regarding the proposed findings instructions. The civilian defense counsel did not request that the military judge instruct the members that lack of consent is an element of Art. 120 (b)(1)(B), UCMJ. When asked by the military judge if he had any objections to the proposed instructions or if he had any requests for additional instructions, the civilian defense counsel stated: "No, Your Honor, I do not."[2] Additionally, during a previous R.C.M. 802 conference, the civilian defense counsel stated that he was "wholly satisfied" with the draft instructions provided by the military judge.[3] This goes well beyond a mere "no objection" assertion and amounts to an affirmative waiver of the instructional issue he now raises.

### 2. Plain error

Even assuming arguendo that the appellant did not affirmatively waive the issue, we review forfeited instructional error, de novo, for plain error. *United States v. Davis*, 76 M.J. 224, 229 (C.A.A.F. 2017). To prevail under plain error, the appellant has the burden of demonstrating that there was error, the error was plain or obvious, and the error materially prejudiced a substantial right of the accused. *Id.* at 230.

As enacted by Congress, Art. 120(b)(1)(B), UCMJ has two elements: (1) a sexual act, and (2) bodily harm caused to the other person.[4] Only Congress has the power to "make Rules for the Government and Regulation of the land and naval forces." *Schlesinger v. Councilman*, 420 U.S. 738, 746 (1975) (quoting U.S. CONST. art I § 8). In recognition of that power, "the definition of the elements of a criminal offense is entrusted to the legislature." *United States v. Castellano*, 72 M.J. 217, 220 (C.A.A.F. 2013) (quoting *Liparota v. United States*, 471 U.S. 419, 424 (1985)). When Congress established the elements of sexual assault by bodily harm, it did not include "lack of consent." *See generally United States v. Riggins*, 75 M.J. 78, 83 (C.A.A.F. 2016) (holding that the offense of sexual assault by placing the other person in fear under Article 120(b)(1)(A), UCMJ, does not include "lack of consent" as an element). The

---

[2] Record at 1462.

[3] *Id.* at 1450.

[4] 10 U.S.C. §920(b)(1)(B); MCM (2012 ed.), Part IV, ¶45.b.(3)(b).

MCM as amended[5] provides support to the statute, clearly stating, "[l]ack of consent is not an element of any offense under this paragraph unless expressly stated." MCM (2016 ed.), Part IV, ¶45.c.(4). Since lack of consent is not a statutory element, the military judge did not err by not including it as an element of the offense in his instructions to the members.

Moreover, the appellant was not prejudiced by the members' instructions because the military judge provided the definition of bodily harm, and sua sponte over trial counsel's objection, provided the definition of consent and instructed the members on the mistake of fact as to consent defense. The appellant argues that the military judge erred because he did not instruct the members that the government was required to prove beyond a reasonable doubt that the victim did not consent to the sex act. First, the members were instructed that bodily harm meant "any offensive touching of another, however slight."[6] As the Court of Appeals for the Armed Forces (CAAF) stated in *United States v. Armstrong*, "an offensive touching cannot be consensual because then it would not be offensive." 77 M.J. 465, 471 (C.A.A.F. 2018). Next, the military judge instructed the members on consent. Although he did not refer to it as an element of the offense or that the government was required to prove lack of consent beyond a reasonable doubt, he explained that:

> Lack of consent may be inferred based upon the circumstances. . . . All of the evidence concerning consent to the sexual conduct is relevant and must be considered in determining whether the government has proven the elements of the offenses. Stated another way, evidence the alleged victim consented to the sexual conduct, either alone or in conjunction with the other evidence in this case, may cause you to have a reasonable doubt as to whether the government has proven every element of each offense.[7]

Finally, the military judge gave the mistake of fact as to consent instruction.[8] This defense requires the government to prove, beyond reasonable

---

[5] Exec. Order No.13740, 81 Fed. Reg. 65175 (Sep. 22, 2016). This court finds this order informative noting that it was issued 3 months after the date of the charged offenses and almost 5 years after Article 120, UCMJ was amended by the National Defense Authorization Act for Fiscal Year 2012, Public Law 112-81, 31 December 2011.

[6] AE LXXXVI at 2; Record at 1469.

[7] AE LXXXVI at 2-3; Record at 1470.

[8] AE LXXXVI at 3; Record at 1471.

doubt, either that the appellant did not believe the victim consented to the sex act or that the appellant's belief as to consent was unreasonable. Accordingly, the military judge's instruction on the statutory elements of the offense was not error, much less plain error.

**C. Improper Argument**

The appellant contends that the assistant trial counsel committed prosecutorial misconduct during closing argument when he made disparaging remarks about the appellant and his civilian defense counsel and interjected personal opinions on the evidence adduced by both the government and defense.

During closing argument, without objection, the assistant trial counsel: (1) proposed to the members that the civilian defense counsel could have been experiencing a "brown out,"[9] (2) argued that the appellant was in a "full-blown sexual predatory rage,"[10] (3) attacked the defense theory by analogizing the victim's vagina to a venus flytrap and her bedroom door as an "analog to her vagina," (4) interjected his personal opinion of the defense theory of the case by comparing it to finding a "sexual unicorn" or a "white buffalo," or winning the "sexual lottery," (5) argued to the members that "it is our job to stop this now" because the appellant "will do it to somebody else,"[11] (6) vouched for the government's case and witnesses, and (7) asked the members to imagine themselves at a dinner party several weeks after the court-martial defending their decision to convict the appellant.[12] The assistant trial counsel was also admonished by the military judge for smiling during the civilian defense counsel's argument. Finally, during rebuttal argument, the

---

[9] Although we do not find error in the assistant trial counsel's particular argument on this point, all counsel are cautioned that using opposing counsel or any other member of the court-martial as a trial prop is a risky venture.

[10] Given the specific evidence admitted during the trial, we do not find this characterization to be error. Even if it were error, the comment occurred a single time and was not prejudicial to the appellant by itself or cumulatively with the other improper arguments.

[11] Record at 1521.

[12] We find no error in the hypothetical dinner party conversation proposed by the assistant trial counsel. "Although poorly contrived, the hypothetical was nothing more than a simplified summary of the facts before the members." *United States v. Patrick*, 78 M.J. 687, 711 (N-M. Ct. Crim. App. 2018). Moreover, the civilian defense counsel adroitly turned this hypothetical against the government's case and effectively used it to show how the members could justify acquitting the appellant of the charges based on the evidence admitted at trial.

trial counsel vouched for the victim's credibility and misstated the law regarding the relevance of properly admitted evidence.

Prosecutorial misconduct occurs when a prosecutor "oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense." *United States v. Fletcher*, 62 M.J. 175,178 (C.A.A.F. 2005) (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)). In general, it is "defined as action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)). The conduct of the "trial counsel must be viewed within the context of the entire court-martial . . . not [just] on words in isolation." *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)).

Improper argument is a type of prosecutorial misconduct that involves a question of law that we review de novo. *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018). When objected to at trial, we review improper argument for prejudicial error. *Id.* "[When] no objection is made, we hold the appellant has forfeited his right to appeal and review for plain error." *Id.* Plain error "requires that: (1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights." *United States v. Pabelona*, 76 M.J. 9, 11 (C.A.A.F. 2017) (internal citations and quotation marks omitted).

We find plain or obvious error in some, but not all, of the challenged parts of the trial counsel's argument to which the defense did not object.

*1. Inflaming the prejudices and passions of the members*

It is a basic rule of our profession that a "prosecutor should not make arguments calculated to appeal to improper prejudices of the trier of fact. The prosecutor should make only those arguments that are consistent with the trier's duty to decide the case on the evidence, and should not seek to divert the trier from that duty." CRIMINAL JUSTICE STANDARDS FOR THE PROSECUTION FUNCTION STANDARD 3-6.8(c) (AM. BAR ASS'N 2015).[13] As courts have often stated, "the trial counsel is at liberty to strike hard, but not foul, blows." *Baer*, 53 M.J. at 237. To that end, the R.C.M. and our case law provide that it

---

[13] *See* Judge Advocate General Instruction 5803.1E, Rule 3.8(e)(6) (20 Jan. 2015) ("To the extent consistent with these Rules, the ABA standards may be used to guide trial counsel in the prosecution of criminal cases.") (citation omitted).

is error for trial counsel to make arguments that "unduly . . . inflame the passions or prejudices of the court members." *United States v. Clifton*, 15 M.J. 26, 30 (C.M.A. 1983); R.C.M. 919(b), Discussion. An accused is supposed to be tried and sentenced as an individual based on the offense(s) charged and the legally and logically relevant evidence presented. It is generally impermissible to ask members to perform a role beyond evaluating the evidence. *See, e.g., Young*, 470 U.S. at 18 (finding error in imploring the jury to "do its job"); *Brown v. State*, 680 S.E.2d. 909, 912-15 (S.C. 2009) (finding error in asking the jury to "speak up" for child victim). Several of trial counsel's remarks run counter to these basic principles.

The assistant trial counsel argued extreme analogies to attack the defense theories. First, trial counsel attacked the defense's theory of victim false accusation by creating a strawman hypothetical situation where "she is sitting up there with her vagina like a venus flytrap waiting for" the appellant in order for him to have sex with her "so she can falsely accuse him later."[14] Next, trial counsel argued that the appellant must have believed the victim's bedroom door was "an analog to her vagina . . . if the door is open then you can have sex with her."[15] The premise of the trial counsel's argument is not the issue but the analogies appear designed to inflame the prejudices and passions of the members. Moreover, using the victim's vagina as the punchline to a shocking analogy also conflicts with the victim's "right to be treated with fairness and with respect for [her] dignity and privacy."[16] The use of unnecessary crude and vulgar analogies also detracts from the dignity of the military justice system.

The assistant trial counsel closed his argument quoting HG's testimony and implored the members that "it is our job to stop this now"[17] because "[MASN King] will do it to somebody else."[18] HG made the quoted statements to KM in an effort to convince her to report the sexual assault but they bear no relevance on the appellant's guilt and could only have served to inflame the passions or prejudices of the members. We find no legal basis that supports the trial counsel's invocation to the members to perform an impermissible role and convict the appellant, not on the evaluation of the evidence be-

---

[14] Record at 1520-21.

[15] *Id.* at 1510.

[16] Art. 6b(8), UCMJ.

[17] Record at 1521.

[18] *Id.*

fore them, but based on the fear that the appellant might sexually assault someone in the future.

### 2. Interjection of personal beliefs and opinions

"It is improper for a trial counsel to interject herself into the proceedings by expressing a personal belief or opinion as to the truth or falsity of any testimony or evidence." *Fletcher*, 62 M.J. at 179 (citations and internal quotation marks omitted). Personal beliefs and opinions may be in the form of improper vouching for the government's case or by offering personal views of the evidence and appellant's guilt. *See id.* at 180.

Improper expression of the trial counsel's views of the evidence can include "offering substantive comments on the truth or falsity of the testimony and evidence." *Id.* at 180. The assistant trial counsel argued that finding KM consented to the sex act is as impossible as "[winning] the sexual lottery,"[19] "[finding] a white buffalo,"[20] and "[finding] the sexual unicorn."[21] The assistant trial counsel argued his opinion of the defense case rather than using the facts admitted into evidence to argue that KM did not consent, the appellant did not believe KM consented, or that appellant's belief that KM consented to the sex act was unreasonable. The argument is comparable to the improper argument in *Fletcher* describing the defense as "nonsense, fiction, unbelievable, ridiculous, and phony." *Id.* (internal quotation marks omitted). Additionally, during rebuttal argument, the trial counsel expressed his opinion of KM's credibility stating: "I feel like it's already been pretty well established that [KM] is a credible person."[22] We find that the arguments of the trial counsel and assistant trial counsel that express their personal opinions of the defense's case and witness credibility are clear error.

Improper vouching occurs when the trial counsel places the "prestige of the government behind" its witnesses and evidence. *Id.* (quoting *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993)). In this case, assistant trial counsel stated "[i]t is a big thing for the United States government to collectively point our finger at a Sailor, even one that's on the way out of the Navy and say, 'you committed a crime.' So we better have the goods and we have the goods."[23] While improperly expressing his opinion of the justness

---

[19] Record at 1517-18.

[20] *Id.* at 1517.

[21] *Id.*

[22] *Id.* at 1582.

[23] *Id.* at 1515.

of the charges, the assistant trial counsel implied that the United States does not charge Sailors unless they are guilty. This remark is clear error due to the use of personal pronouns in connection with the power and prestige of the United States government placed behind the government's witnesses and evidence. *See id.* at 179-80.

### 3. Objections raised

Unlike the above, the civilian defense counsel objected to two improper actions and arguments made by the trial counsel team. First, the civilian defense counsel noted that the assistant trial counsel was smiling during the defense's closing argument and requested the court instruct him to stop. The assistant trial counsel's facial gestures constitute improper vouching or interjecting his personal opinion of the argument of defense counsel. In response to defense counsel's request, the military judge instructed the assistant trial counsel "to maintain a neutral face at all times."[24] Second, the trial counsel referred to consent and properly admitted evidence as irrelevant numerous times before the civilian defense counsel objected. The military judge instructed the members to "disregard any statement by the trial counsel that there are facts in this case that have been admitted that are not relevant."[25] We will review the prejudicial impact of these improper actions below, along with the prejudicial impact of the improper arguments not objected to at trial.

### 4. Prejudice to the appellant

Finding error in some of the complained about arguments of the trial counsel team, we now turn to the third element of our plain error analysis and examine the record for prejudice. *Pabelona*, 76 M.J. at 12. In cases of prosecutorial misconduct, we evaluate potential prejudice by examining the severity of the misconduct, the measures adopted to cure the misconduct, and the weight of the evidence supporting the conviction. *Fletcher*, 62 M.J. at 184. "[P]rosecutorial misconduct by a trial counsel will require reversal when the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone." *Id.*

We first look at the severity of the misconduct. In *United States v. Pabelona*, this court found that despite prosecutorial misconduct, the severity of

---

[24] *Id.* at 1535.

[25] *Id.* at 1589.

that misconduct was low because it was limited to the arguments of a "lengthy four day trial" and consisted of "relatively isolated comments" and "cover[ed] a small fraction of the trial." No. 201400244, 2015 CCA LEXIS 424, at *9 (N-M. Ct. Crim. App. Oct. 15, 2015), *aff'd,* 76 M.J. 9 (C.A.A.F. 2017). The circumstances in this case are similar to those in *Pabelona.* The appellant's trial lasted for four days and the assistant trial counsel and the trial counsel used improper arguments and remarks just a few times during approximately two hours of combined closing and rebuttal argument.[26] Taken as a whole and in context of a lengthy and emotionally charged trial, both trial counsels' improper arguments and comments amounted to only a very small fraction of the trial. Improper vouching for the government's case and asking the members to convict the appellant based on the fear that he might sexually assault someone in the future were the most egregious of the trial counsels' infractions, but each comment occurred a single time and neither was a central theme of the government's case. Although some of the assistant trial counsel's remarks were extremely improper,[27] we find that the misconduct taken in proper context was not unduly severe.

Next, we look at whether there were any curative measures taken. Upon civilian defense counsel's request, the military judge admonished the assistant trial counsel for smiling and instructed him to keep a neutral face during the defense's argument. Also, upon defense counsel's objection to the trial counsel's misuse of the word "relevant," the military judge instructed the members to disregard any inferences from trial counsel's misstatement of the law referring to properly admitted evidence as irrelevant. When an improper argument objection is raised, the curative instructions given by the military judge are presumed to be adequate to alleviate the effect, if any, of the improper argument on the members. *See United States v. Short,* 77 M.J. 148, 151 (C.A.A.F. 2018) ("We presume, absent contrary indications, that the

---

[26] Record at 1485-1521, 1563-90.

[27] As Judge Sparks reminds all of us in *United States v. Voorhees,* __ M.J. __, No. 18-0372, 2019 CAAF LEXIS 477, at *18-19 (C.A.A.F. June 27, 2019),

> the consistent flow of improper argument appeals to our Court suggests that those in supervisory positions overseeing junior judge advocates are, whether intentionally or not, condoning this type of conduct. As superior officers, these individuals should remind their subordinate judge advocates of the importance of the prosecutor's role within the military justice system and should counsel them to "seek justice, not merely to convict."

(quoting *Fletcher,* 62 M.J. at 182).

panel followed the military judge's instructions with regard to the . . . trial counsel's arguments.") (internal quotation marks omitted). Although the military judge did not take any specific curative measures for improper argument beyond what was objected to by civilian defense counsel, he did repeatedly instruct the members that the "arguments by counsel are not evidence" and to "base the determination of the issues in the case on the evidence as you remember it and apply the law as I instruct you."[28] Finding no evidence to the contrary, we find that the members followed the military judge's instructions.

Finally, we consider the strength of the evidence against the accused. In *United States v. Halpin,* the CAAF found that the weight of the evidence supporting the appellant's conviction alone was strong enough to establish a lack of prejudice. 71 M.J. 477, 480 (C.A.A.F. 2013). Here, the government's case for those offenses that resulted in conviction was overwhelming. The evidence against the appellant included an admission by the appellant to HG, within an hour of the assault, that he and the victim had been "intimate;" DNA analysis that confirmed the appellant had ejaculated in KM's vagina; testimony that the appellant and the victim had no prior interaction; testimony that the victim was last seen sleeping with the light on, that her the door was shut; and finally, the government evidence included testimony from KM that she was awakened by someone grabbing and pulling her legs to the side of the bed, penetrating her vulva with his penis, claiming to be her best friend, that she said "no," that he flipped her over onto her stomach and penetrated her with fingers and then again with his penis as he held her arm behind her back and pushed her shoulder into the bed.

Considering the isolated and brief nature of the government's improper comments and arguments and the strength of the government's case compared to the appellant's case, we find that the appellant was not prejudiced. In addition, as to the objections made by defense counsel and the military judge's curative instructions in response, we are confident in the members' ability to adhere to the military judge's instructions and put trial counsel's comments in proper context. We have no cause to question the fairness or integrity of the trial and are convinced that the members convicted the appellant on the evidence alone.

---

[28] Record at 1467, 1484-85, 1565, 1576.

## D. Legal and Factual Sufficiency

The appellant contends that his conviction for sexually assaulting KM is legally and factually insufficient. We review questions of legal and factual sufficiency de novo. Art. 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is whether "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [this court is] convinced of appellant's guilt beyond a reasonable doubt." *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) (citation, internal quotation marks, and emphasis omitted). In conducting this unique appellate function, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. Proof beyond a reasonable doubt does not mean, however, that the evidence must be free from conflict. *United States v. Goode*, 54 M.J. 836, 841 (N-M. Ct. Crim. App. 2001). "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297-98, (C.A.A.F. 2018) (quoting *Rosario*, 76 M.J. at 117).

As discussed above, the case against the appellant was strong. The appellant does not contest the underlying sexual act, but avers that the finding is legally and factually insufficient because KM may have consented to having sexual intercourse with a man she believed to be her friend and roommate. We disagree.

KM may have been intoxicated and confused as she awoke, but her behavior did not demonstrate consent. KM testified that she had never met the appellant before that evening and that she did not flirt with him or give him any signals that she wanted to have sex with him. She testified that she woke up to being penetrated, and asked "who was doing this?" The man replied that it was her friend HG. However, KM testified that she knew it was not HG because of the way he was handling her, and that even if it were HG, she would not have consented. KM told the appellant to stop several times and tried to push him off her before he flipped her over. KM began to cry and pleaded with him to stop but the appellant continued until he ejaculated and then left the room. Shortly thereafter, KM texted HG and asked him if he had been in her room. Within minutes, KM and HG concluded that the appellant had been in KM's room and had sexually assaulted her.

Consequently, after carefully reviewing the record of trial and considering all of the evidence in a light most favorable to the prosecution, we are con-

vinced that a rational factfinder could have found that the appellant committed a sexual act on KM by penetrating her vulva with his penis and that the appellant did so by causing bodily harm to KM by restraining her legs, pushing her shoulder onto the bed, and twisting her arm behind her back. Moreover, a rational factfinder could have found that the appellant did not believe that KM consented to the sexual act or that, if the appellant did believe that KM consented to the sexual act, that the belief was unreasonable under the circumstances. Furthermore, weighing all the evidence in the record and making allowances for not having personally observed the witnesses, we too are convinced beyond a reasonable doubt of the appellant's guilt.

**E. Details of Prior Sexual Assault**

The appellant asserts the military judge abused his discretion by excluding evidence under MIL. R. EVID. 412 regarding the complete factual circumstances of KM's previous sexual assault. The military judge limited cross-examination of KM, regarding the previous sexual assault, to the date, her level of intoxication and that the prior assault involved nonconsensual vaginal penetration. The military judge also ruled that:

> [A]dditional details about Ms. K.M.'s prior experiences as a victim of sexual assault has [sic] scant probative value to this trial, are not material to the Defense's case, and assuming arguendo such additional details had some small amount of probative value, it would be substantially outweighed by the danger of confusion of the issues and unfair prejudice.[29]

We review the military judge's ruling to exclude evidence pursuant to MIL. R. EVID. 412 for an abuse of discretion. *United States v. Ellerbrock*, 70 M.J. 314, 317 (C.A.A.F. 2011). We review the findings of fact under a clearly erroneous standard and the conclusions of law de novo. *Id.* The abuse of discretion standard "recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citations and internal quotation marks omitted). "In reviewing a military judge's ruling for abuse of discretion . . . we review the record material before the military judge" not arguments submitted on appeal. *United States v. Lloyd*, 69 M.J. 95, 100 (C.A.A.F. 2010).

The military judge conducted a closed hearing under MIL. R. EVID. 412 where he heard testimony and the arguments of counsel. The appellant now

---

[29] AE LXI at 17.

argues that additional facts concerning the previous sexual assault and the circumstances alleged in this case were critical to the defense theory of the case at trial. Specifically, the appellant avers that the military judge should have allowed cross-examination of KM on the fact that she was out with friends, that her assailant followed her home to keep her safe, and that he forced himself into KM's house. However, the appellant never raised or articulated these specific details as important to the defense theory of the case.

Under MIL. R. EVID. 412, evidence offered by an accused to show that the alleged victim engaged in other sexual behavior is inadmissible, with three limited exceptions, only the third of which is in contention here – when "the exclusion of . . . [that evidence] would violate the constitutional rights of the accused." MIL. R. EVID. 412(b)(1)(C). This exception includes the appellant's Sixth Amendment[30] right to confront witnesses, including the right to cross-examine those witnesses. *Ellerbrock*, 70 M.J. at 318.

Evidence of past sexual behavior must also pass a balancing test as outlined in MIL. R. EVID. 412(c)(3) and clarified by *United States v. Gaddis*, 70 M.J. 248, 250 (C.A.A.F. 2011). The test is whether the evidence is "relevant, material, and [if] the probative value of the evidence outweighs the dangers of unfair prejudice." *Ellerbrock*, 70 M.J. at 318 (citation omitted). Relevant evidence is evidence that has "any tendency to make a fact more or less probable than it would be without the evidence." MIL. R. EVID. 401. Evidence is material if it is "of consequence to the determination of appellant's guilt." *United States v. Dorsey*, 16 M.J. 1, 6 (C.M.A. 1983) (citations and internal quotation marks omitted). The dangers of unfair prejudice "include concerns about 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Ellerbrock,* 70 M.J. at 319 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). The party intending to admit evidence under MIL. R. EVID. 412 has the burden of proving the evidence is admissible under the rule. MIL. R. EVID. 412(c)(3); *United States v. Banker*, 60 M.J. 216, 223 (C.A.A.F. 2004).

We find the military judge did not abuse his discretion by limiting the cross-examination of KM. The civilian defense counsel wanted to elicit the pertinent facts of KM's previous sexual assault to support the theory that KM was now confabulating those events and experiencing memory intrusion. The military judge allowed cross-examination of KM on the facts surrounding her prior sexual assault that were similar to the appellant's case and supported the defense theory proffered to the military judge. Specifically, the military

---

[30] U.S. CONST. amend. VI.

judge allowed cross-examination on the fact that the prior sexual assault involved nonconsensual vaginal penetration and that KM was intoxicated. The military judge also allowed the appellant to elicit when the prior assault occurred. The excluded details the appellant now complains of are not similar to the facts of the appellant's case and they do not support the defense theory at trial. The military judge issued a written ruling articulating his analysis and concluded that any additional details had scant probative value, were not material to the defense case, and even if they had some probative value, that value would be substantially outweighed by the danger of confusion of the issues and unfair prejudice.[31] *See United States v. Manns,* 54 M.J. 164, 166 (C.A.A.F. 2000) (holding courts are highly deferential when a military judge articulates his analysis on the record). The military judge's findings of fact are not clearly erroneous and his conclusions of law are correct in finding that the additional details were not material to the defense's case and therefore not constitutionally required. The military judge's ruling does not fall outside the range of reasonable choices available to him.

**F. Error in the Staff Judge Advocate Recommendation**

We note error in the post-trial processing of the appellant's case. Specifically, the staff judge advocate (SJA) failed to comment on the legal error raised by the appellant in his R.C.M. 1105 matters.

R.C.M. 1106(d)(4) directs that: "the staff judge advocate shall state whether, in the staff judge advocate's opinion, corrective action on the findings or sentence should be taken when an allegation of legal error is raised in matters submitted under R.C.M. 1105." Prior to taking final action, the convening authority must consider, inter alia, the R.C.M. 1105 matters submitted by the accused and the recommendation of the staff judge advocate. R.C.M. 1107(b)(3)(A).

Here, the record does not include the required advice from the SJA as to whether the alleged errors warranted "corrective action on the findings or sentence." R.C.M. 1106(d)(4). The addendum to the Staff Judge Advocate's Recommendation (SJAR) failed to address the trial defense counsel's allegation of legal error and state whether, in the SJA's opinion, corrective action should be taken. This constituted error.

We next determine whether that error was prejudicial to the substantial rights of the appellant. The threshold for establishing prejudice in post-trial processing is low, but an appellant must make at least "some colorable show-

---

[31] AE LXI at 17.

ing of possible prejudice." *United States v. Scalo*, 60 M.J. 435, 436-37 (C.A.A.F. 2005) (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

The convening authority should remedy legal error where possible. However, the convening authority is not required to review the record of trial for error. *United States v. Hamilton*, 47 M.J. 32, 35 (C.A.A.F. 1997). Failure to address a claim of legal error in an addendum to an SJAR can be remedied through appellate litigation of the claimed error. *Id.* Consequently, it is appropriate for this court to consider whether any prejudice may have resulted from the failure to address the defense claims of legal error. *United States v. Welker*, 44 M.J. 85, 89 (C.A.A.F. 1996). If an appellate court finds that the alleged error has no merit, then the failure to identify and address the alleged legal error in the addendum to the SJAR has not prejudiced the appellant. *Hamilton*, 47 M.J. at 35; *Scalo*, 60 M.J. at 436.

Here, the addendum to the SJAR failed to address the appellant's allegations that the evidence was legally and factually insufficient to support his conviction and that the sentence was too severe. We addressed the legal and factual sufficiency issues in our opinion above and found no merit in either. We also do not find any legal error in the severity of the adjudged sentence. Because there was no error found in either issue raised in the appellant's R.C.M. 1105 submission, the appellant cannot make a showing of possible prejudice.

### G. Error in the Court-Martial Order

Although not raised by the appellant, we note an error in the Court-Martial Order (CMO). Specification 1 of Charge II uses the word "he" instead of the correct word "her." We review error in CMOs under a harmless error standard. *United States v. Crumpley,* 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998). The appellant has not asserted, and we do not find, that this scrivener's error materially prejudiced his substantial rights. However, the appellant is entitled to accurate court-martial records, and we order corrective action in the decretal paragraph. *Id.*

### III. CONCLUSION

Having carefully considered the record, briefs, and oral arguments of appellate counsel, we conclude the findings and sentence are correct in law and fact and that no error materially prejudicial to the appellant's substantial rights occurred. Arts. 59 and 66, UCMJ. The supplemental CMO shall reflect the correct text in Specification 1 of Charge II. Accordingly, the findings and sentence as approved by the convening authority are AFFIRMED.

Chief Judge CRISFIELD and Senior Judge FULTON concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court